IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONICBLUE AEROSPACE, INC. | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| ROLLS-ROYCE HOLDINGS PLC, ROLLS ROYCE CORPORATION, ROLLS-ROYCE NORTH AMERICAN TECHNOLOGIES, INC., KONGSBERG GRUPPEN ASA, KONGSBERG MARTITIME AS, and KONGSBERG MARITIME, INC. | ) Civil Action No. 3:21-cv-122 ) Judge Stephanie L. Haines ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss the First Amended Complaint Pursuant to Rule 12(b) (ECF No. 24) filed by Defendants Rolls-Royce Holdings PLC, Rolls-Royce Corporation, and Rolls-Royce North American Technologies, Inc. (collectively, the "Rolls-Royce Defendants") and a Motion to Dismiss the First Amended Complaint Pursuant to Rule 12(b) (ECF No. 37) filed by Defendants Kongsberg Gruppen ASA, Kongsberg Maritime AS, and Kongsberg Maritime, Inc. (collectively, the "Kongsberg Defendants"). In their motions, Defendants assert this Court lacks personal jurisdiction over them, and alternatively, that Plaintiff Sonicblue Aerospace, Inc. ("Plaintiff") has failed to state a claim against them upon which relief can be granted. This matter has been fully briefed (ECF Nos. 25, 38, 40, 41, 46, 47, and 51) and is now ripe for disposition. For the reasons stated below, the Court will GRANT Defendants' Motions (ECF No. 24) and (ECF No. 37) and dismiss this case for lack of jurisdiction.[1]

---

[1] As the Court finds it lacks jurisdiction over the Defendants, it does not rule on the Defendants' arguments as to improper venue under Rule 12(b)(3) and Plaintiff's failure to state a claim under Rule 12(b)(6).

1

## I. Background

According to the currently operative Amended Complaint (ECF No. 6), Plaintiff is a corporation organized under the laws of Delaware, with a principal place of business in Maine, and was founded on June 4, 2004, by Richard H. Lugg, ("Lugg"), a distinguished aerospace engineer (ECF No. 6 at ¶¶2, 16). Plaintiff states it is a leading innovator in the field of gas turbine engines for aerospace and marine applications. *Id.* at ¶2. In October 2005, Plaintiff entered into a non-disclosure agreement ("NDA") with Defendant Rolls-Royce North American Technologies, Inc. (ECF No. 5-2). Pursuant to the NDA, Plaintiff provided "Proprietary Information" relating to improved gas turbine engines which the Rolls-Royce Defendants then allegedly disclosed and used to develop a marine permanent magnet thruster (ECF No. 6 at ¶¶ 24-25, 68-69, 72). Based on the misappropriation of that proprietary information, Plaintiff alleges the marine permanent magnet thruster infringes on the patent it holds at U.S. Patent No. 8,446,060 ("the '060 patent").

The Amended Complaint further alleges Rolls-Royce sold its commercial marine business to a Kongsberg entity on or about April 1, 2019, and the Kongsberg Defendants have continued to sell and offer for sale in the United States the same products previously offered by Rolls-Royce, including the accused marine permanent magnet thruster. *Id.* at ¶50. Plaintiff claims the accused Kongsberg marine permanent magnet thruster includes each element of one or more claims of the '060 patent, including at least claim 1 of the '060 patent. *Id.* at ¶51.

Plaintiff's Amended Complaint contains the following seven counts against the Rolls-Royce Defendants: infringement of the '060 Patent (Count I); breach of the NDA under Indiana common law (Count III); violation of the Defend Trade Secrets Act ("DTSA") (Count IV); violation of the Maine Uniform Trade Secrets Act (Count V); violation of the Indiana Uniform Trade Secrets Act (Count VI); conversion (Count VII) and civil conspiracy (Count VIII). The

Amended Complaint asserts against the Kongsberg Defendants claims for infringement the '060 patent (Count II) and a claim for conversion (Count VII). Plaintiff seeks an award of all damages permitted by law, including, nominal, incidental, compensatory, punitive, and statutory in an amount not less than seventy-two million dollars, and an assessment of costs, including reasonable attorney fees pursuant to 35 U.S.C. § 285.

**II. Jurisdictional Facts**

Because a challenge of personal jurisdiction under Rule 12(b)(2) allows the parties to produce competent evidence to either establish or refute jurisdiction, *see Metcalfe v. Renessaince Marine, Inc.*, 566 F. 3d 324, 330-331 (3rd Cir. 2009), the Court has derived the following facts regarding jurisdiction from Plaintiff's Amended Complaint (ECF No. 6), the briefs submitted by the parties (ECF Nos. 25, 38, 40, 41, 46, 47, and 51), and the evidence attached to those filings. *See Baker v. LivaNova,* PLC, 210 F. Supp. 3d 642 (M.D. Pa. Sep. 29, 2016).

Defendant Rolls-Royce Holdings, PLC is a public limited company organized under the laws of England in the United Kingdom with its principal place of business in the United Kingdom, and Defendants Rolls-Royce Corporation and Rolls-Royce North American Technologies, Inc. are corporations organized under the laws of Delaware, with principal places of business in Indianapolis, Indiana (ECF No. 6 at ¶¶3-5). Defendants Kongsberg Gruppen ASA and Kongsberg Maritime AS are public limited liability companies organized under the laws of Norway, with principal places of business in Norway, and Defendant Kongsberg Maritime, Inc. is a corporation organized under the laws of Texas, with a principal place of business in Houston, Texas. *Id.* at ¶¶6-8.

As to the events involved in the execution and alleged breach of the NDA, the Amended Complaint describes that most of the proprietary information at issue was developed in Maine and

that Plaintiff's CEO, Richard Lugg, met with Rolls-Royce employees and disclosed the alleged trade secrets in Indiana, Maine, and London (ECF No. 6 at ¶¶ 17, 19, 24-30). The NDA was executed in Indiana, governed by Indiana law, and between Indiana residents (Defendants Rolls-Royce Corporation and Rolls-Royce North American Technologies, Inc.) and a Maine resident (Plaintiff).

Plaintiff alleges this Court has personal jurisdiction over the Defendants because they do business or engage in other activities listed in Pennsylvania's long-arm jurisdiction statute, 42 Pa. C.S. § 5322, including that they have advertised and have placed the accused marine permanent magnet thruster on sale in Pennsylvania and in this District (ECF No. 6 at ¶¶12-13). Plaintiff has provided several declarations by its CEO Richard Lugg to support its jurisdictional claims (ECF Nos. 40-3, 41-1, 41-2, 51-1, and 51-2).

As to the Rolls-Royce Defendants, Lugg states in his declarations that, for more than 20 years, Defendant Rolls-Royce Corporation provided gas turbine engines and other related goods and services to Boeing Rotorcraft Systems in Ridley Park, Pennsylvania and the United States Naval Air Systems Command in Philadelphia, Pennsylvania for the propulsion of the V-22 Osprey tiltrotor military aircraft and a number of variants, resulting in 400 V-22 Ospreys and variants built for the armed forces (ECF No. 40-3 at ¶¶5-7). Lugg also states that, on February 2, 2021, Defendant Rolls-Royce Corporation was awarded a $72.9 million contract to produce gas turbine engines for 33 V-22 Ospreys, with manufacturing to be done in Indianapolis, after which the engines would be shipped to Boeing Rotorcraft Systems in Ridley Park, Pennsylvania. *Id.* at ¶8. Lugg also states that a recent press release from Defendant Rolls-Royce Holdings, PLC reported that a Rolls-Royce model AG9140 generator was installed at the United States Navy's Land-Based Engineering Site in Philadelphia, Pennsylvania. *Id.* at ¶¶ 10-11.

Lugg contends further that there are Rolls-Royce sales and service centers located at 1518 Parkway View Drive, Pittsburgh, Pennsylvania, 15205 and 18 Creek Parkway, Boothwyn, Pennsylvania 19061. The Amended Complaint describes that there is a Rolls-Royce Cybersecurity Technology Research Network at the CyLab Security and Privacy Institute, Robert Mehrabian Collaborative Innovation Center at Carnegie Mellon University, located at 4720 Forbes Avenue, Pittsburgh, Pennsylvania 15213, as well as another regular and established place of business at 410 Rouser Road, Moon Township, Pennsylvania 15108, established through a third party contractor (ECF No. 6 at ¶14). Plaintiff contends circumstances exist to disregard Defendants Rolls-Royce Corporation, Rolls-Royce North American Technologies, Inc., and Rolls-Royce Holdings, PLC as distinct, separate corporations, and the Court may therefore attribute any one of the Rolls-Royce Defendants' actions and locations to all of them.

In response, the Rolls-Royce Defendants have provided evidence to refute Plaintiff's allegations. The evidence shows the 1518 Parkway View Drive location belongs to Boeing Distribution (a Boeing group company, formerly Aviall), a distributor for Rolls-Royce M250 or RR300 engines, parts, modules and tooling (ECF No. 25-4). The Carnegie Mellon University location is related to a cybersecurity research network partly funded by "Rolls-Royce," which focuses on enhancing product security unrelated to the turbine engine technology (ECF Nos. 25 and 25-6).[2] The Rolls-Royce Defendants also attach the Declaration of Mary Sullivan, the

---

[2] Plaintiff does not assert a specific jurisdictional argument based on the Carnegie Mellon University location in its briefing, but the Court notes such a relationship between the Rolls-Royce Defendants and Carnegie Mellon University is too attenuated to serve as a basis for personal jurisdiction. *See Lambeth Magnetic Structures, LLC v. Toshiba Corp.*, Civil Action No. 14-1526, 2017 U.S. Dist. LEXIS 28411, at *15 (W.D. Pa. Mar. 1, 2017) (finding that defendant's funding of Carnegie Mellon University's Data Storage Systems Center ("DSSC") was too attenuated to establish personal jurisdiction and failed to meet both the reasonableness requirement of the Court of Appeals for the Federal Circuit's specific jurisdiction and the requirement that the infringement claim arise out of or relate to the defendant's activities with the forum state, noting this would be

Corporate Secretary for Rolls-Royce North America Holdings Inc. (ECF No. 25-2), and Ms. Sullivan states that the 410 Rouser Road location used to be an office of a company within Rolls-Royce Nuclear Services, an entity who is not a party to this matter, but that the business was sold in January of 2020 to Westinghouse Electric Company (ECF Nos. 25-2 and 25-7).

Lastly, Defendant Rolls-Royce Corporation and Defendant Rolls-Royce North American Technologies, Inc. have produced affidavit evidence stating they do not have any offices, facilities, or employees in this District or anywhere in Pennsylvania (ECF No. 25-2 at ¶¶4, 6). Likewise, the affidavit evidence states Defendant Rolls-Royce Holdings, PLC is a holding company incorporated under the laws of England, is not registered to do business in Pennsylvania or anywhere else in the United States, does not have employees, does not have offices or other physical places of business, does not make or sell any products or services, and does not otherwise conduct commercial operations, in Pennsylvania or elsewhere. *Id.* at ¶10.

Relating to jurisdiction over the Kongsberg Defendants, Plaintiff states that these Defendants advertised and placed the accused marine permanent magnet thrusters on sale in Pennsylvania and in this District (ECF No. 6 at ¶13). Plaintiff pleads Kongsberg contracted with Garner Technologies Inc. to sell products of the Mesotech subsidiary of Kongsberg Maritime AS in Pennsylvania. *Id.* Plaintiff also pleads that Kongsberg has a regular and established place of business in this District at 210 Industrial Park Road, Johnstown, Pennsylvania, 15904 (ECF No. 6 at ¶15).[3]

---

the case even if the subject matter of the research being conducted at the Carnegie Mellon DSSC overlapped with the subject matter of the suit—a fact not alleged in this matter).

[3] Plaintiff also generally alleges that Defendants have offered and/or induced for sale the accused marine permanent magnet thrusters in this District through a number of press releases. However, these press releases do not establish a connection between the Defendants and Pennsylvania so as to confer jurisdiction. *See Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 649 (M.D. Pa. 2016)(finding general marketing strategy towards the United States does not show that defendant

In response to these allegations, Egil Haugsdal, president of Defendant Kongsberg Maritime AS, provided a declaration wherein he attests that the 210 Industrial Park Road, Johnstown, Pennsylvania, 15904 location belongs to Kongsberg Protech Systems USA Corp., a wholly owned subsidiary of Kongsberg Defence & Aerospace AS, that these entities are separate and distinct from the named Kongsberg Defendants, and that these entities have no role with respect to marine permanent magnet thrusters (ECF No. 38-1 at ¶¶18-20). The declaration also states that Kongsberg Mesotech Ltd. was an entity incorporated in Canada, with a principle place of business in Canada, that it is also a separate and distinct entity from the named Kongsberg Defendants, and that it never sold marine permanent magnet thrusters. *Id.* at ¶22.

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss an action for lack of personal jurisdiction. Federal Circuit law governs questions of personal jurisdiction over claims of patent infringement. *Autogenomics, Inc. v. Oxford Gene Technology, Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) ("[T]he jurisdictional issue is intimately involved with the substance of patent law."). There are two types of personal jurisdiction — general and specific. In this case, Plaintiff appears to contend there is both general and specific jurisdiction over the Defendants.

For general jurisdiction, the Supreme Court has held that "the place of incorporation and principal place of business of a corporation are the paradigm bases for general jurisdiction," but that general jurisdiction is conferred over a foreign corporation when that corporation's affiliations with the forum state are "so continuous and systematic as to render the foreign [defendant]

---

committed any affirmative act to submit itself to the laws of Pennsylvania). Further, Plaintiff's argument that these press releases are acts of patent infringement under 28 U.S.C. § 1391(b)(3) relates to venue, and as previously stated, the Court does not reach the parties' arguments as to venue as it dismisses the case for lack of personal jurisdiction over Defendants.

essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (internal quotation marks omitted).

A determination as to whether a defendant is subject to specific personal jurisdiction involves two questions: "first, whether the forum state's long arm statue permits service of process and, second, whether the assertion of jurisdiction is consistent with the due process clause." *Celgard LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015) (internal citations omitted). "Pennsylvania's long-arm statute provides that its reach is coextensive with the limits placed on the states by the federal Constitution." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). Therefore, the court must then look to federal constitutional doctrine to determine a defendant's susceptibility to personal jurisdiction in Pennsylvania. *See Tube-Mac Indus. v. Campbell*, Civil Action No., 2021 U.S. Dist. LEXIS 16953, at *7 (E.D. Va. Jan. 28, 2021).

Due process requires that a defendant have sufficient "minimum contacts with the [forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). The "constitutional touchstone" of specific personal jurisdiction is whether a "defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The Court looks to whether a defendant has " 'purposefully directed' his activities at residents of the forum …and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472. Additionally, if the other requirements are met, "a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted). A defendant's

forum-related activities should lead it to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

Once a challenge to personal jurisdiction has been raised, the plaintiff bears the burden of establishing "jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990). The plaintiff must show "either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (citations omitted). When the district court does not hold an evidentiary hearing as to personal jurisdiction, the plaintiff must "establish a *prima facie* case of personal jurisdiction," and the Court must accept as true all allegations in the complaint. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2007); *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."). In this case, as the Court bases its analysis on the affidavits and evidence submitted through the parties' filings, the Court has not held a hearing in this matter, and accordingly, the Court applies the prima facie standard.

Plaintiff requests in the alternative that the Court allow for it to conduct jurisdictional discovery in order to establish Defendants' contacts with Pennsylvania. "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446,

456 (3rd Cir. 2003) (internal quotation marks omitted), *see, Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 n.20 (3d Cir. 2018). In *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit explained that "jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'" *Id.* at 1042 (3d Cir. 1997) (quoting *Nehemiah v. The Athletics Congress,* 765 F.2d 42, 48 (3d Cir.1985)*)*.

## IV.   Analysis

Upon review of the evidence before the Court, Plaintiff has failed to meet its prima facie burden to show continuous and systematic contacts with Pennsylvania in order to confer general jurisdiction or that the cause of action arose from Defendants' forum-related activities so as to confer specific jurisdiction. Further, as Plaintiff has also failed to present factual allegations that suggest with reasonable particularity the possible existence of such contacts, the Court finds Plaintiff's jurisdictional claims are clearly frivolous and will deny Plaintiff's request for jurisdictional discovery.

### A. General Jurisdiction

Under *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), the Supreme Court held that "only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction." In this case, there is no dispute that none of the Defendants are incorporated or have principal places of business in Pennsylvania. Instead, Plaintiff alleges that it has established the Defendants are "essentially at home" in Pennsylvania through the Defendants' continuous, systematic, and substantial business contacts with Pennsylvania. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021).

1. Rolls-Royce Defendants

As to the Rolls-Royce Defendants, Plaintiff relies primarily on its contentions relating to the gas turbine engines and other related goods for the V-22 Ospreys that Defendant Rolls-Royce Corporation allegedly provided to Boeing Rotorcraft Systems in Ridley Park, Pennsylvania and the United States Naval Air Systems Command in Philadelphia, Pennsylvania (ECF No. 40-3 at ¶¶5-8). Plaintiff further states that a recent press release from Defendant Rolls-Royce Holdings, PLC also reported that a Rolls-Royce model AG9140 generator was installed at the United States Navy's Land-Based Engineering Site in Philadelphia, Pennsylvania, which was involved in a major generator upgrade for Navy destroyers. *Id.* at ¶¶ 10-11. Plaintiff argues these facts present an exceptionally clear case for allowing general jurisdiction over all Rolls-Royce Defendants, and further, Plaintiff contends the Court may disregard that the Rolls-Royce Defendants are distinct, separate corporations, and attribute these alleged contacts with Pennsylvania to them globally.

However, these facts, even if accepted as true, fall well below the standard for establishing general jurisdiction over the Rolls-Royce Defendants. Indeed, the Supreme Court expressly rejected finding that general jurisdiction existed in more compelling circumstances. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014) (finding corporation Daimler was not "at home" in California, despite presence of sales offices and retail locations in the state, execution of contracts within the state, and conducting of a significant amount of business within the boundaries of the state, when state was not the location of its corporate headquarters or principal place of business).

2. Kongsberg Defendants

As to the Kongsberg Defendants, these Defendants have provided evidence showing that they do not have their corporate headquarters or principle place of business in Pennsylvania, and that they do not have continuous, systematic, and substantial business contacts with Pennsylvania.

11

The 210 Industrial Park Road, Johnstown, Pennsylvania, 15904 location belongs to a distinct Kongsberg entity, Kongsberg Protech Systems USA Corporation, which is a separate entity that has no role with respect to marine permanent magnet thrusters (ECF No. 38-1 at ¶¶18-20). The evidence also shows that Kongsberg Mesotech Ltd. is likewise a separate and distinct entity from the named Kongsberg Defendants, and that this entity did not sell marine permanent magnet thrusters. *Id.* at ¶22.

To refute this evidence, Plaintiff's CEO Lugg proffers that, in his opinion, business development executives at Kongsberg Defence & Aerospace AS, the holding company of the entity alleged to own the Johnstown, Pennsylvania facility, would have collaborated with Defendant Kongsberg Maritime AS and/or Defendant Kongsberg Maritime, Inc. in investigating opportunities for contracts to provide products with the Kongsberg maritime permanent magnet thruster to the United States Navy and/or to navies of other countries and in making proposals for such contracts (ECF No. 41-1 at ¶21). Plaintiff contends this alleged collaboration between Defendant Kongsberg Maritime AS and/or Defendant Kongsberg Maritime, Inc. and Kongsberg Defence & Aerospace AS confers general jurisdiction over the Kongsberg Defendants.

It is undisputed that Kongsberg Defence & Aerospace AS, Kongsberg Protech Systems USA Corporation, and Kongsberg Mesotech Ltd. are not named defendants in this matter, and even accepting as true Plaintiff's speculation that these entities *may* have collaborated with named Kongsberg Defendants, Plaintiff has failed to establish that such possible contact rises to the level of contacts required under *Daimler* to establish general jurisdiction over the Kongsberg Defendants. The Kongsberg Defendants have provided evidence indicating they did not sell, offer to sell, manufacture, or use any marine permanent magnet thruster in Pennsylvania, these Defendants do not have a physical location in Pennsylvania, or any employees that reside in

Pennsylvania. Plaintiff's belief regarding possible collaboration between these entities neither refutes this evidence nor acts to render the named Kongsberg Defendants "at home" in Pennsylvania.

### B. Specific Jurisdiction

Based on essentially the same arguments, Plaintiff contends the Court has specific jurisdiction over the Defendants based on a minimum contacts or stream of commerce theory (ECF No. 40 at p. 17). However, Plaintiff has failed to demonstrate how Defendants "purposefully directed its activities at residents of the forum state" or how Plaintiffs' claim "arises out of or relates to [defendants'] activities with the forum state." *Lambeth Magnetic Structures, LLC v. Toshiba Corp.*, No. CV 14-1526, 2017 U.S. Dist. LEXIS 28411, at *3 (W.D. Pa. Mar. 1, 2017).

1. <u>Rolls-Royce Defendants</u>

While the Amended Complaint referenced Boeing's manufacture of V-22 Ospreys in Ridley Park using Rolls-Royce gas turbine engines to argue general jurisdiction, Lugg now contends that at a 2005 meeting with Rolls-Royce employee Philip Burkholder, Burkholder suggested using some of the alleged proprietary information at issue in this case in an engine which was being used in the V-22 Osprey to support Plaintiff's arguments for specific jurisdiction over the Rolls-Royce Defendants (ECF No. 40-3 at ¶29). However, even assuming this suggestion was made, a suggested use of the alleged proprietary information does not establish that any Rolls-Royce Defendant placed such a product into the stream of commerce, let alone took any purposeful act directed at Pennsylvania. The Court's exercise of jurisdiction would be based on assumptions that the proprietary information was in fact utilized in a gas turbine engine used in a V-22 Osprey manufactured by a third party at that third party's facility in Pennsylvania for military end users.

Even accepting all of Plaintiff's allegations as true, this chain of assumptions is too attenuated to establish specific jurisdiction in Pennsylvania over the Rolls-Royce Defendants.

Plaintiff also contends that it participated with Rolls-Royce on a project known as the UCHAV (Unmanned Combat Hybrid Aerial Vehicle) in which the proprietary information at issue in this case was disclosed by Plaintiff to be used to retrofit Rolls-Royce AE1107 engines being manufactured at a Rolls-Royce plant in or near Ridley Park, Pennsylvania for use in a hybrid electric unmanned aerial vehicle (ECF No. 40-3 at ¶¶13-36). Again, the Rolls-Royce Defendants have produced evidence demonstrating that the Ridley Park facility is not a Rolls-Royce plant. Plaintiff contends, however, that Lugg believed that one or more of the Rolls-Royce Defendants had facilities in Pennsylvania when he was disclosing trade secrets to Defendant Rolls-Royce Corporation (ECF No. 51 at p. 4, ECF No. 40-3 at ¶¶34-36). Such a belief is insufficient to support Plaintiff's prima facie burden as to specific jurisdiction.

Plaintiff's allegations are even further transformed in Plaintiff's Sur-Reply Brief (ECF No. 51), wherein Plaintiff summarily states that Plaintiff worked on the engine for the V-22 Osprey, that Plaintiff disclosed proprietary information at issue in this case to Rolls-Royce relative to the V-22 Osprey engine, that this information was used or considered for use in the V-22 Osprey engine, and that these engines were contracted for sale in Pennsylvania, sold in Pennsylvania, and shipped by Rolls-Royce to their destination in Pennsylvania (ECF No. 51 at p. 2). However, though Plaintiff provided several declarations in support of its allegations (ECF Nos. 40-3, 41-1, 41-2, 51-1, and 51-2), including two declarations in support of its Sur-Reply (ECF Nos. 51-1 and 51-2), Plaintiff's affidavit evidence attests only that Rolls-Royce *considered* using the proprietary information in the V-22 Osprey (ECF No. 40-3 at ¶¶29-30), and as previously stated, this evidence fails to satisfy Plaintiff's prima facie burden as to specific jurisdiction.

2. <u>Kongsberg Defendants</u>

Plaintiff's arguments as to specific jurisdiction over the Kongsberg Defendants are similar, if not identical, to its argument as to general jurisdiction over these Defendants. These arguments failed to confer general jurisdiction over these Defendants, and likewise, Plaintiff has failed to support a finding of specific jurisdiction over any of the Kongsberg Defendants.

Plaintiff does not allege nationwide sales and distribution of "the accused marine permanent magnetic thruster" in the United States or that Kongsberg purposefully targeted Pennsylvania. Moreover, the Kongsberg Defendants have provided affidavit evidence indicating Kongsberg has not sold a single marine permanent magnet thruster anywhere in the United States (ECF No. 38-1 at ¶¶14-15), and that U.S.-based Defendant Kongsberg Maritime, Inc. does not have any offices or other physical locations in Pennsylvania and does not have any employees that reside in Pennsylvania. Kongsberg Protech Systems USA Corp. is the entity who owns the Johnstown, Pennsylvania business, which is a wholly owned subsidiary of Kongsberg Defence & Aerospace AS. The Kongsberg Defendants have produced evidence demonstrating that these entities are within Kongsberg's defense and aerospace business, are separate and distinct entities from the named Kongsberg Defendants, and that these entities have no role with respect to marine permanent magnet thrusters.

Plaintiff does not refute this evidence. Rather, Plaintiff argues that it believes Defendants Kongsberg Maritime AS and/or Kongsberg Maritime, Inc. and Kongsberg Defence & Aerospace AS could have collaborated to provide vehicles with marine permanent magnet thrusters that infringe on the '060 patent, and thus the patent infringement claim would be related to and arise out of Defendant Kongsberg Maritime's "minimum contacts" with this District (ECF No. 41 at p. 18). Plaintiff argues also that Defendant Kongsberg Maritime could also have contracted with

Kongsberg Defence & Aerospace AS to have a place of business in Johnstown, Pennsylvania where they could collaborate to provide vehicles with marine permanent magnet thrusters that infringe on the '060 patent. *Id.* at p. 20.

However, Plaintiff provides no evidence or factual allegations to support its inferences of such collaboration.[4] As Plaintiff does not refute the Kongsberg Defendants' affidavit evidence, let alone provide evidence to demonstrate that the Kongsberg Defendants have minimum contacts with Pennsylvania regarding the causes of action at issue in this case, Plaintiff has failed to meet its jurisdictional burden as to the Kongsberg Defendants.

### C. Jurisdictional Discovery

Plaintiff requests jurisdictional discovery to determine the Defendants' contacts in Pennsylvania. As previously stated, jurisdictional discovery is generally allowed unless the jurisdictional claim is "clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). In order to demonstrate that the claim is not clearly frivolous, the plaintiff must "present[] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." *N.A. Water Sys., LLC v. Allstates Worldcargo, Inc.*, No. 2:13-cv-1507, 2014 U.S. Dist. LEXIS 146658, at *16-17 (W.D. Pa. Aug. 12, 2014) (internal citation omitted).

Plaintiff has failed to present factual allegations to suggest with reasonable particularity the existence of requisite contacts for personal jurisdiction. Indeed, the allegations Plaintiff initially cited to confer jurisdiction over these Defendants were squarely refuted by Defendants'

---

[4] Plaintiff requests jurisdictional discovery to find evidence in support of these inferences, but as addressed herein, the Court denies this request as Plaintiff's jurisdictional claim is clearly frivolous. Indeed, this unsupported request further underscores that Plaintiff is not able to demonstrate any facts in support of its theories as to specific jurisdiction over these Defendants.

16

affidavit evidence and submissions to the Court. In response, Plaintiff contends that it should now be entitled to conduct discovery to find factual support for its allegations of Defendants' possible collaboration with third-party entities involving proprietary information at issue in this case.

The Third Circuit has warned against allowing "fishing expedition[s] based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). In this case, Plaintiff has only provided suggestions of possible activities and collaborations, which may or may not have even taken place, let alone taken place in Pennsylvania. Moreover, such collaboration falls well short of conferring general jurisdiction, and Plaintiff has failed to allege facts to connect the alleged collaboration and the claims in this suit so as to confer specific jurisdiction. Plaintiff contends jurisdictional discovery *may* lead to evidence to support its allegations, but as Plaintiff's speculations are not based on any factual allegations or evidence, the Court finds Plaintiff's jurisdictional claims are clearly frivolous.

Plaintiff also argues that, if the Court does not grant jurisdictional discovery for purposes of maintaining Plaintiff's choice of forum, a bifurcation of the case will duplicate costs by any transfer, insofar as Plaintiff must then sue the Rolls-Royce Defendants in the District of Delaware and the Kongsberg Defendants in the Southern District of Texas (ECF No. 51 at p. 10). Ultimately though, such circumstances do not confer jurisdiction in Pennsylvania over the named Defendants, and they do not excuse Plaintiff's inability to meet its jurisdictional burden.

**D. Transfer**

The Third Circuit has explained that a district court which lacks personal jurisdiction over a defendant can transfer a case pursuant to 28 U.S.C. § 1631. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009) (citing *Island Insteel Sys., Inc.*

17

*v. Waters*, 296 F.3d 200, 218 n.9, 44 V.I. 389 (3d Cir. 2002)). A transfer is appropriate if: 1) the action could have originally been brought in the transferee forum; and 2) transfer is in the interest of justice. *See* 28 U.S.C. § 1631. The district court does, however, have "broad discretion" not to transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

In this case, the Kongsberg Defendants request transfer to the Southern District of Texas. The Rolls-Royce Defendants indicate venue would be appropriate as to the claims against them in the Southern District of Indiana. Plaintiff indicates the Court may transfer the case to the District of Delaware. However, none of the parties have briefed the factors the Court should consider in determining what jurisdiction and venue would be appropriate in the interests of justice. Further, the Court's dismissal of this case based on lack of personal jurisdiction only precludes Plaintiff from relitigating the issue of personal jurisdiction in Pennsylvania, and Plaintiff may refile its claims in any proper forum. Accordingly, the Court declines to exercise its ability to transfer this matter. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020) ("If a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer.").

V.   **Conclusion**

Plaintiff has failed to meet its prima facie burden to establish that this Court has personal jurisdiction over Defendants. Accordingly, the Court will GRANT Defendants' Motions to Dismiss (ECF No. 24) and (ECF No. 37) and dismiss this case for lack of jurisdiction. An appropriate Order will follow.

Stephanie L. Haines<br>
United States District Judge

cc/ecf: All counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONICBLUE AEROSPACE, INC. )<br><br>　　　　　Plaintiff, )<br>)<br>　vs. )<br>)<br>ROLLS-ROYCE HOLDINGS PLC, ROLLS )<br>ROYCE CORPORATION, ROLLS-ROYCE )<br>NORTH AMERICAN TECHNOLOGIES, )<br>INC., KONGSBERG GRUPPEN ASA, )<br>KONGSBERG MARITIME AS, and )<br>KONGSBERG MARITIME, INC. )<br>)<br>　　　　　Defendants. ) | Civil Action No. 3:21-cv-122<br>Judge Stephanie L. Haines |

**ORDER**

AND NOW, this 24th day of June, 2022, for the reasons stated in the foregoing Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss the First Amended Complaint Pursuant to Rule 12(b) (ECF No. 24) filed by Defendants Rolls-Royce Holdings PLC, Rolls-Royce Corporation, and Rolls-Royce North American Technologies, Inc. and the Motion to Dismiss the First Amended Complaint Pursuant to Rule 12(b) (ECF No. 37) filed by Defendants Kongsberg Gruppen ASA, Kongsberg Maritime AS, and Kongsberg Maritime, Inc. are GRANTED. All claims against Defendants are hereby DISMISSED for lack of personal jurisdiction.[5] The Clerk of Court shall mark this matter as CLOSED.

　　　　　　　　　　　　　　　　　　　Stephanie L. Haines
　　　　　　　　　　　　　　　　　　　United States District Judge

cc/ecf: All counsel of record

---

[5] The Court of Appeals for the Third Circuit has held that, when a court enters an order granting a motion to dismiss on the basis of lack of personal jurisdiction, the order "preclude[s] ... relitigating the issue of personal jurisdiction in Pennsylvania." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020). Plaintiff is not precluded from bringing an action against the defendants in a forum where personal jurisdiction over them exists. *Id.*